# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of: )
)
Cellular telephone assigned call number 414.949.2951, (the ) Case No. 20-MJ-78
"Target Cell Phone #1") further described in Attachment A )
)
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:
- ■ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ■ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 21, United States Code, Sections 841(a)(1) and 846.

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Clinton Blauser, USMS
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: 2/21/2020

_____
*Judge's signature*

City and State: Milwaukee, Wisconsin     Honorable William E. Duffin, U.S. Magistrate Judge
*Printed Name and Title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Clinton Blauser, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A), for information about the location of the cellular telephone assigned call number 414.949.2951 (**Target Cell Phone #1**), known to be used by Lamar JOHNSON, aka "Fresh," whose service provider is Sprint, a wireless telephone service provider headquartered in [ ]. **Target Cell Phone #1** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am employed as a Deputy with the United States Marshals Service (USMS) and have held that position for over 9 years. Prior to being employed with the United States Marshals Service, I spent three years working for the Allen County Sheriff's Department in Allen County, Indiana, as a Police Officer and a Confinement Officer. As part of my duties in my current position, I conduct investigations to locate federal and state fugitives.

3. This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this

investigation, and with whom your affiant has had regular contact regarding this investigation.

4. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with the intent to distribute controlled substances) and 846 (conspiracy to distribute and possess with the intent to distribute controlled substances) have been committed, are being committed, and will be committed by Lamar JOHNSON, aka "Fresh." There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal offenses and will lead to the identification of other individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

6. In February of 2019, case agents initiated an investigation into a group of known and unknown drug traffickers operating in the Milwaukee area, known as the Buffum Meinecke Boys ("BMB"), including Ramone LOCKE aka "Mone", Amir LOCKE aka "Big Mir", Joey VAZQUEZ aka "Joey", Louis BATES aka "Little Louis", Michael SMITH aka "M&M", Garrell HUGHES aka "Rello", Jesus PUENTES aka "JP", Coury AGEE aka "Lil C", Lamar JOHNSON aka "Fresh", Luis Lorenzo aka "Pito", and others. As part of the investigation, case agents have interviewed several confidential sources,

2

conducted physical and electronic surveillance, utilized pen registers, reviewed historical phone toll records, subpoenaed and reviewed records, and conducted controlled purchases of cocaine, crack cocaine, and heroin. As a result of the intelligence provided by the confidential sources and the controlled purchases, along with information obtained from other law enforcement techniques, case agents have identified various members of the BMB and identified several sources of supply.

7. In December of 2019, a particular confidential source hereinafter designated as CS # 3 stated to law enforcement that he was familiar with BMB, and that BMB is comprised of members from different groups, identified as the East Side Mafioso, Buffum Chambers group, and Buffum Auer group. CS #3 stated that BMB has sets of cellular phones that generate drug profits for BMB. CS #3 stated that they (the BMB) share drug purchasers with each other to maximize profit. CS #3 stated that the cellular phones that BMB use are from a previous drug dealer that was indicted; CS #3 stated that those phones were ported and are not used by BMB, which consisted of multiple cellular phones with the same contact list. CS #3 stated that by virtue of the drug dealing being utilized through these cellular phones, BMB is generating approximately one (1) million dollars a month. CS #3 provided names of persons involved within the BMB group, including Ramone LOCKE, Jesus PUENTES, Michael SMITH, Victor GONZALEZ, and Louis BATES.

8. Throughout the course of the investigation of BMB, case agents have made several controlled buys of controlled substances from members of BMB. Based on my

3

training and experience, I know a "controlled buy" is a law enforcement operation in which an informant purchases drugs from a target. The operation is conducted using surveillance, usually audio and video taping equipment, and pre-recorded purchase money. When an informant is used, s/he is searched for contraband, weapons, and money before the operation. The informant is also wired with a concealed body recorder and/or a monitoring device. When the transaction is completed, the informant meets case agents at a pre-determined meet location and gives the purchased drugs and the recording/monitoring equipment to the case agents. The informant is again searched for contraband, weapons, and money and then interviewed by the case agents about the drug transaction. A sample of the suspected drugs is then field tested by the case agents for the presence of controlled substances and then placed in inventory pursuant to normal inventory procedures. All of the calls to the target by the informants are consensually recorded calls under the direction and control of case agents and made in the presence of case agents. Additionally, case agents observe the informants dial the target's number on each occasion and the contact is verified through telephone records.

9. On November 12, 2019, CS #3 contacted JOHNSON at 262.666.1673 and requested heroin. JOHNSON agreed, and set a predetermined meeting location near North Buffum Street and East Center Street in Milwaukee. At that location, CS #3 approached a Honda Fit bearing Wisconsin registration 244-ZTR, which has been utilized by multiple other members of the BMB. Inside were Dennis KING and Tracey Spivey.

4

KING and CS #3 exchanged the controlled buy money for the requested heroin, which ultimately weighed 40.52 grams.

10. On February 21, 2020, the USMS was informed by the United States Probation Office that JOHNSON had provided the phone number of 414.949.2951 to that same office. Your affiant consulted with two law enforcement databases known in the past to be reliable and confirmed that JOHNSON is associated with the phone number of 414.949.2951.

11. For several reasons, case agents believe CS #3 to be credible and reliable. First, CS #3 has been providing continuous information since September of 2019. Second, the information provided by CS #3 is consistent with evidence obtained elsewhere in this investigation where CS #3 was not utilized, and substantial portions of CS #3's information has been corroborated through independent investigation, including surveillance and information from other sources. CS #3 is cooperating for monetary compensation and has prior felony convictions for armed robbery, heroin trafficking and marijuana trafficking. CS #3 is currently on state supervised release. For these reasons, case agents believe CS #3 to be reliable.

12. Case agents searched law enforcement databases to confirm that **Target Cell Phone #1** is currently being serviced by T-Mobile.

13. Case agents are requesting these warrants authorizing the disclosure of data related to **Target Cell Phone #1** for 45 days to further investigate JOHNSON's

5

activities, and to identify locations to which JOHNSON is traveling in order to further his drug distribution network.

14. Based upon my training and experience, I know that individuals involved in drug trafficking use their cellular telephones to contact other drug dealers and drug purchasers, and that information relating to their telephones may show the areas in which they are trafficking drugs and the individuals who they are contacting to sell or distribute the drugs. Based upon the facts in this affidavit, there is probable cause to believe that JOHNSON is engaged in the trafficking and distribution of heroin and is likely utilizing **Target Cell Phone #1** while engaged in these crimes. I further submit that probable cause exists to believe that obtaining the location information of **Target Cell Phone #1** will assist case agents in determining JOHNSON's customers, co-conspirators, sources of supply, and help to identify stash houses.

15. In my training and experience, I have learned that Sprint is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell

6

towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

16. Based on my training and experience, I know that Sprint can collect E-911 Phase II data about the location of the **Target Cell Phone #1**, including by initiating a signal to determine the location of the **Target Cell Phone #1** on Sprint's network or with such other reference points as may be reasonably available.

17. Based on my training and experience, I further know that Sprint can collect what are known as RTT records, PCMD records, NELOS records, Timing Advance ("TrueCall") records, and other records containing timing advance measurements and distance-to-tower measurements for various technologies (including CDMA, GSM, UMTS, LTE, etc.).

18. Based on my training and experience, I know that Sprint can collect cell-site data about **Target Cell Phone #1**.

## AUTHORIZATION REQUEST

19. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

7

Case 2:20-mj-00078-WED   Filed 03/03/20   Page 8 of 13   Document 1

20. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 180 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of **Target Cell Phone #1** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

21. I further request that the Court direct Sprint to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Sprint for a time period of 45 days from the date the warrant is signed. I also request that the Court direct Sprint to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Sprint

services, including by initiating a signal to determine the location of **Target Cell Phone #1** on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

22. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate **Target Cell Phone #1** outside of daytime hours.

9

Case 2:20-mj-00078-WED   Filed 03/03/20   Page 10 of 13   Document 1

## ATTACHMENT A
## Property to Be Searched

1. The cellular telephone assigned call number 414.949.2951 (**Target Cell Phone #1**), whose wireless service provider is Sprint, a company headquartered at 327 Hillsborough St., Raleigh, NC 27603.

2. Information about the location of **Target Cell Phone #1** that is within the possession, custody, or control of T-Mobile.

## ATTACHMENT B
## Particular Things to be Seized

All information about the location of **Target Cell Phone #1** described in Attachment A for a period of forty-five days from the date the warrant is signed, during all times of day and night. "Information about the location of **Target Cell Phone #1**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, including RTT records, PCMD records, NELOS records, Timing Advance ("TrueCall") records, and all other records containing timing advance measurements and distance-to-tower measurements for various technologies (including CDMA, GSM, UMTS, LTE, etc.), as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile, T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of **Target Cell Phone #1** on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).